[Cite as *State v. Kievman*, 2014-Ohio-3008.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2013-11-081 |
| | : | O P I N I O N |
| - vs - | | 7/7/2014 |
| | : | |
| MEIKO M. KIEVMAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2013 CRB 03789

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**RINGLAND, P.J.**

{¶ 1}  Defendant-appellant, Meiko M. Kievman, appeals from her conviction in the Clermont County Municipal Court for domestic violence and resisting arrest.  Appellant argues the trial court erred by accepting her waiver of the right to counsel without ensuring that she had a "broad understanding" of the case.  For the reasons that follow, we agree with appellant's argument, and therefore reverse her conviction and remand this matter for further

proceedings consistent with this opinion.

{¶ 2}   In 2013, Clermont County Sheriff's Deputy Ryan Early was dispatched to a residence in Batavia to investigate a report of a domestic disturbance.  Upon entering the residence, Deputy Early heard screaming coming from the basement.  When he went down to the basement to investigate, he found appellant arguing with her husband.  In an effort to calm appellant, Deputy Early asked another occupant of the home, Michelle Brinkman, to bring appellant's young child to the basement.  When Brinkman did so, appellant charged at Brinkman, and Deputy Early had to physically intervene.  Deputy Early had difficulty calming appellant and advised her to calm down or he would arrest her for obstructing official business.  When appellant continued to struggle, Deputy Early arrested her for that offense. When appellant struggled further, Deputy Early advised her that he would charge her with resisting arrest if she did not stop, and when appellant continued to struggle, Deputy Early arrested her for that offense, too.

{¶ 3}   Deputy Early filed three complaints against appellant in the Clermont County Municipal Court, charging her with domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor; obstructing official business in violation of R.C. 2921.31, a second-degree misdemeanor; resisting arrest in violation of R.C. 2921.33, a second-degree misdemeanor.  The trial court appointed Public Defender Kendra Daugherty to represent appellant.

{¶ 4}   At appellant's arraignment,  Public Defender Daugherty advised the trial court that she had spent an hour-and-a-half with appellant who had indicated to her that she "did not wish for the public defender to represent her[.]"  Appellant, who is Japanese and has a limited understanding of English, was provided with a certified Japanese interpreter, Reiko K. Mills.  The trial court instructed Interpreter Mills "to translate exactly" for appellant a form entitled, "Waiver of Right to Counsel[,]" which states that "[b]eing fully advised in open Court

- 2 -

counsel to represent me at no cost to myself in accordance with Rule 44 Ohio Rules of Criminal Procedure, I herewith knowingly, intelligently, and voluntarily waive assignment of counsel to represent me and otherwise waive my right to be represented by counsel." [sic]

{¶ 5} The trial court, with Interpreter Mills translating, informed appellant that because the charge is a serious charge carrying a possible jail sentence, she had a right to counsel and that if she was unable to afford counsel, counsel would be appointed to her by the court through the public defender's office at no cost to her. Interpreter Mills advised the trial court that appellant understood what the trial court was saying, and therefore, she would let appellant speak for herself. Appellant, speaking for herself, told the trial court that while her "English is not perfect obviously[,]" she wanted to try to speak for herself, and the trial court permitted her to do so.

{¶ 6} When the trial court told appellant that it needed her "either to get the assistance of an attorney or waive the right to an attorney[,]" appellant asked, "[s]o if I refuse her [Public Defender Daugherty] or any public defender now that means that I will have no public defender throughout the * * *[,]" at which point the trial court interjected, "That's right. My advice to you is to accept the help." The trial court also informed appellant that she had the right to hire her "own attorney with [her] own money." When the trial court asked appellant, "[w]hy don't you want the help of Ms. Daugherty who's here and can explain these things to you?" appellant replied that "I will prefer not to say that right now but I would like to represent myself if it's possible." Shortly thereafter, the trial court told appellant that because the charge of domestic violence is a serious charge, it was "advisable" for her to have counsel and that she "at least [should] have Ms. Daugherty to consult with." Appellant responded that she had tried to consult with Public Defender Daugherty, but "it didn't go well, so that is my decision."

{¶ 7} Appellant then told the trial court, "[s]o I would like to sign this document [the

waiver of counsel form] if that, if that's a choice that was given to me." However, when the trial court told her, "[a]lright, sign the document[,]" appellant asked the trial court if the only two choices she had was to accept representation from the public defender or to sign the waiver of counsel form. Appellant said that the matter should not involve "any American tax money at all" and should be resolved between her and the "claimant" or "plaintiff," whom she did not identify. The trial court told appellant that she was "completely wrong and your understanding is wrong" and that she needed an attorney to explain her choices to her and that she should not waive her right to counsel but, instead, should have Public Defender Daugherty represent her. Appellant replied that she wanted to sign the waiver of attorney form and stated that "I'd like to represent myself although I do understand I'm not an expert. I do not know much about laws. I just know what happened."

{¶ 8} After appellant signed the waiver of counsel form, the trial court asked her, "you've been advised of your right to counsel and you've signed a waiver of your right to counsel, correct?, to which appellant, through Interpreter Mills, answered, "Yes." The trial court stated that "I'll find that you knowingly voluntarily [sic] and intelligently waived your right to counsel even though this court has advised you not to waive your right to counsel, right?" to which appellant, through Interpreter Mills, replied "Yes."

{¶ 9} *Before appellant executed the waiver of counsel form*, the trial court explained to her that "[t]he charge that you're here on is domestic violence," that "[i]t's a misdemeanor of the first degree[,]" and that it "is punishable by up to six months in jail" and "a fine of up to $1,000." However, the trial court failed to provide appellant with a similar explanation regarding the charges of obstructing official business and resisting arrest. *After appellant executed the waiver of counsel form*, the trial court read to appellant the three complaints charging her with domestic violence, obstructing official business and resisting arrest. However, the trial court failed to explain to appellant the maximum penalties for the charges

- 4 -

of resisting arrest and obstructing official business. The trial court did not discuss with appellant the possible defenses to any of the charges or the circumstances in mitigation thereof. Appellant acknowledged that Public Defender Daugherty previously had read to her the charges against her, and Public Defender Daugherty informed the trial court that she also had read to appellant "all of the discovery."

{¶ 10} On September 20, 2013, appellant appeared for trial. An interpreter was again present but appellant stated that she wished to proceed without the interpreter. The state offered appellant another plea bargain, and appellant initially accepted it. However, appellant then asked the trial court to "dismiss" her prior waiver of counsel, to appoint her new counsel, and to allow her to consult with new counsel about the plea offer. The trial court refused appellant's requests and told her she was either going to plead or go to trial. The state withdrew its plea offer and the matter proceeded to trial.

{¶ 11} During the trial, appellant was found in contempt several times, including at the end of the first day of trial, when she asked the trial judge if he "really care[d] about the truth," accused him of being biased against her, and told him he was "not God." At the close of evidence, the trial court found appellant guilty of the charges of domestic violence and resisting arrest but not guilty of the charge of obstructing official business, after determining that the obstructing official business charge was "very closely akin factually" to the resisting arrest charge. The trial court sentenced appellant to 180 days on the domestic violence charge, with 172 days of the sentence suspended, and 90 days on the resisting arrest charge, with 72 days of that sentence suspended, and ordered her to serve the sentences concurrently. The trial court also placed appellant on three years of reporting probation and ordered her to undergo anger management counseling.

{¶ 12} Appellant now appeals, assigning the following as error:

{¶ 13} THE TRIAL COURT ERRED IN DENYING APPELLANT HER RIGHT TO

COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SCTION [sic] 10, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶ 14} Appellant argues her waiver of counsel was not valid because the trial court failed to insure that she had a "broad understanding" of the case. We agree with this argument.

{¶ 15} In *State v. Dinka*, 12th Dist. Warren No. CA2013-03-021, 2013-Ohio-4646, ¶15-17, this court stated:

> "[T]o establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." [*State v.*] *Gibson*[, 45 Ohio St.2d 366 (1976)] at paragraph two of the syllabus; *State v. Overholt,* 77 Ohio App.3d 111, 116-17 (3d Dist.1991). In order for the defendant to "competently and intelligently choose self-representation, he must be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Internal quotations omitted.) *State v. Petaway,* 3d Dist. Logan No. 8-05-11, 2006-Ohio-2941, ¶ 8, quoting *Faretta* [*v. California*, 422 U.S. 806] at 835 [, 95 S.Ct. 2525 (1975)].
>
> Generally, Ohio courts look to see whether, under the totality of the circumstances, the defendant's waiver of his right to counsel was voluntarily, knowingly, and intelligently given. *State v. Thompson,* 180 Ohio App.3d 714, 2009-Ohio-185, ¶ 8 (3d Dist.). "To discharge this duty in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Gibson* at 377. For a waiver of counsel to be valid, such waiver must be made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and *all other facts essential to a broad understanding of the whole matter*." [*State v.*] *Fields* [12th Dist. Warren Nos. CA97-09-100, CA97-09-101, and CA97-11-118, 1998 WL 372367] at *2-3 [(July 6, 1998)], citing *Overholt* at 117 and *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323 (1948).
>
> Pursuant to Crim.R. 44(B), when a defendant has been charged with a petty offense, as in the case at hand, the trial court may

assign counsel to represent him. However, "when a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B); *Fields* at *2 (holding that, absent a knowing, intelligent, and voluntary waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial).

(Emphasis added.)

{¶ 16} Additionally, "'[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *State v. Suber*, 154 Ohio App.3d 681, 2003-Ohio-5210, ¶15, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019 (1938). The information the accused must possess to make an intelligent decision will depend on a number of case-specific factors, including the accused's education or sophistication and whether the charges are easily understood or complex. *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379 (2004).

{¶ 17} Initially, the statements appellant made to the trial court for which she was found in contempt were deplorable, and we commend the trial court for behaving in a professional manner in the face of appellant's conduct. Nevertheless, we agree with appellant's argument that the trial court erred by accepting her waiver of the right to counsel, because appellant did not waive her right to counsel knowingly, intelligently and voluntarily and with "a broad understanding of the whole matter."

{¶ 18} It is apparent from the record that before appellant executed her waiver of the right to counsel, the trial court did not fully advise her of the nature of *all* of the charges against her, the range of allowable punishments for *all* of the offenses with which she was charged, or the possible defenses to *any* of those charges or the circumstances in mitigation thereof. While the waiver of counsel form signed by appellant advised her of the right to

counsel at no cost, it did not contain a detailed explanation of the right to counsel, the nature of the charges or the potential penalties.

{¶ 19} Prior to appellant's execution of the waiver of counsel form, the trial court advised her of one of the charges against her, i.e., domestic violence, and the maximum penalty for that offense, but failed to explain the nature of that charge. The trial court failed entirely to advise appellant of the other two charges against her, i.e., obstructing official business and resisting arrest, explaining neither the nature of those charges nor the maximum penalties for those offenses. After appellant executed the waiver of counsel form, the trial court explained to her the nature of all of the charges against her by reading them to her. Moreover, appellant acknowledged that Public Defender Daugherty had read the charges to her before the arraignment and that she understood them, and Daugherty herself advised the trial court that she had read to appellant "all of the discovery." Still, the trial court did not discuss with appellant the maximum penalties for the charges of obstructing justice or resisting arrest, and the trial court did not discuss with appellant the possible defenses or circumstances in mitigation thereof regarding any of the three charges against her. Additionally, the written waiver of counsel form executed by appellant was couched in conclusory terms and was otherwise inadequate to cure any defects in the dialogue between appellant and the trial court on the subject of waiver of the right to counsel.

{¶ 20} As to appellant's "background, experience, and conduct[,]" *Suber*, 2003-Ohio-5210 at ¶15, appellant is 31 years old and has a degree in international business. A review of the record shows that she still has some limitations as to her fluency in English. The record also shows that before this incident, appellant had not been jailed or even charged with any crime. All of these facts, taken together, establish that appellant's waiver of the right to counsel was not knowing, intelligent or voluntary.

{¶ 21} The state relies upon Public Defender Daugherty's statement on the record that

she had spoken with appellant for an hour-and-a-half and that appellant had indicated that she did not want to be represented by her, as well as the fact that the colloquy between the trial court and appellant at the time she executed her waiver of the right to counsel lasted another hour-and-a-half. Admittedly, it is tempting to find that the colloquy between the trial court and appellant regarding her waiver of the right to counsel substantially complied with the requirements set forth in *Gibson*, 45 Ohio St.2d 366 at paragraph two of the syllabus, and cases that have followed it, such as this court's decision in *Dinka*, 2013-Ohio-4646 at ¶15-17. For example, appellant has argued on appeal that the trial court erred by failing to discuss all the charges with her, but appellant acknowledged at her arraignment that Public Defender Daugherty already had read all of the charges to her and that she understood the charges. However, the trial court failed to advise appellant of the maximum penalties for two of the charges against her, i.e., obstructing official business and resisting arrest, and failed to discuss with appellant the possible defenses to the charges and circumstances in mitigation thereof for any of the three charges.

{¶ 22} Two well-established principles control our decision here: (1) it is incumbent upon the state to prove "an intentional relinquishment or abandonment of a known right or privilege[,]" and (2) "courts indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977). After "indulg[ing] in every reasonable presumption against waiver" in this case, we conclude that the state failed to prove that appellant intentionally relinquished or abandoned her right to counsel given all of the circumstances present here, including the defects in the advice the trial court furnished to appellant at the time she signed her waiver of the right to counsel.

{¶ 23} Appellant also argues that her waiver of the right to counsel was limited to the arraignment hearing and did not extend to any further proceedings, including her trial, and that it is "well settled" that an accused's waiver of the right to counsel can be withdrawn or

revoked and that she did so here prior to trial, and therefore the trial court erred by not allowing her to withdraw or revoke her waiver of the right to counsel.  However, we need not address these arguments as they have been rendered moot by our resolution of appellant's initial argument under this assignment of error.

{¶ 24} Accordingly, appellant's assignment of error is sustained to the extent indicated.

{¶ 25} The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this court's opinion.

S. POWELL and M. POWELL, JJ., concur.